United States Bankruptcy Court

Northern District of Illinois

Eastern Division

| | |
|---|---|
| In re:<br><br>Demetrios Arvanitis,<br><br>                    Debtor.<br>───────────────<br>FNA Group, Inc.,<br>                    Plaintiff<br>          v.<br>Demetrios Arvanitis,<br>                    Defendant. | Bankruptcy No. 14-bk-15420<br><br>Chapter 7<br><br>Adversary No. 14-ap-514 |

## MEMORANDUM OPINION ON FNA'S MOTION FOR SUMMARY JUDGMENT

This adversary proceeding was brought by FNA Group, Inc. ("FNA") against
Debtor Demetrios Arvanitis ("Arvanitis"). It relates to the Debtor's Chapter 7 case, and
seeks to except a debt from discharge under 11 U.S.C. §§ 523(a)(4) and 523(a)(6). After
an Answer was filed, FNA Group moved for summary judgment based on asserted
issue preclusion arising from a state court order imposing a temporary restraining order
("TRO") and an order finding civil contempt.

Arvanitis formerly worked at FNA from 1996 through 2012, rising to the title of
Director of Operation and Logistics. During his employment at FNA Group, it is alleged
that Arvanitis secretly recorded confidential conversations between FNA Group
employees and clients, and gathered other proprietary and confidential information.
After he left employment at FNA Group, Arvanitis allegedly blackmailed FNA Group
by threatening to reveal the confidential information to the public. FNA Group sued in
state court, seeking an injunction and damages. Arvanitis then filed his petition for
relief under Chapter 7 of the Bankruptcy Code. This adversary proceeding and the
motion for summary judgment followed. For the following reasons, summary judgment
will be denied.

## UNCONTESTED FACTS

The following background facts are drawn from the Plaintiff's Statement of
Uncontested Facts, which was filed as required by Local Bankruptcy Rule 7056-1, and
the Defendant's response as required by Local Bankruptcy 7056-2. The statements of
uncontested facts are nearly all verbatim copies of the allegations contained in the
complaint. "The facts are viewed in the light most favorable to the non-moving party
and all reasonable inferences are drawn in [his] favor." *Ault v. Speicher*, 634 F.3d 942, 945
(7th Cir. 2011).

FNA alleges that: FNA is an Illinois corporation which manufactures and sells
pressure washers. (Complaint ¶ 5; 7056-1 ¶ 1.) Arvanitis admits this fact. (7056-2 ¶ 1.)
Arvanitis was an employee of FNA for 16 years from September, 1996 to August 2012.
(Answer ¶ 6; 7056 ¶ 2.) On the date of his departure, Arvanitis held the title of Direct of
Operations and Logistics, and his job responsibilities included supervising FNA
facilities and the operation and security of FNA's buildings. (Answer ¶ 6; 7056-2 ¶ 3.)

FNA alleges that Arvanitis signed a "Trade Secret/Non-Disclosure Agreement"
and received an "Employee Handbook," which included a "Confidentiality
Agreement" and signed an acknowledgement form relating to the Employee Handbook
during his employment. (Complaint ¶¶ 7, 10, 12; 7056-1 ¶¶ 5, 8, 9.) Arvanitis denies that
he ever executed any of those documents (7056-2 ¶¶ 5, 8, 9.), but does not contest the
contents of the documents (7056-2 ¶ 6-7, 10.). Strangely enough, even though Arvanitis
denies ever signing those documents, he admits as an uncontested fact that he was "at
all times bound by the terms of the Trade-Secret/Non-Disclosure Agreement, the
Employee Handbook and the Confidentiality Agreement." (7056-2 ¶ 11.)

FNA alleges, and Arvanitis denies, that Arvanitis collected proprietary and
confidential information from FNA, including using secret audio-visual recording
devices. (Complaint ¶¶ 15-18; 7056-1 ¶¶ 12-15.) After his employment ended, Arvanitis

2

allegedly refused to return the confidential materials to FNA, and threatened to reveal the confidential and proprietary information, and even revealed some to third parties. (Complaint ¶ 19; 7056-1 ¶¶ 17, 19.) Arvanitis denies these facts.

FNA sued in state court, seeking damages and an injunction for the alleged theft of proprietary and confidential information, under various theories, including breach of contract, breach of fiduciary duty, conversion, and intrusion upon seclusion. (Complaint ¶ 21; 7065-1 ¶ 20.) The following history of the litigation in state court is uncontested by Arvanitis. That is, he admits that the events in state court took place, even as he contests the substance of what was alleged in the state court proceeding. (7052-2 ¶¶ 21-49.) FNA moved for a temporary restraining order and preliminary injunction. (Complaint ¶ 31; 7056-1 ¶ 28.) After a hearing, the state court judge entered the TRO, which required Arvanitis to return immediately any materials from his employment at FNA including any materials containing confidential or proprietary information. (Complaint ¶ 32; 7056-1 ¶ 29.) The state court's order only refers to consideration of the verified complaint and motions by counsel. (Dkt. 25 Exh. D.) FNA contends that the TRO was entered based on a preponderance of the evidence, which is not contested by Arvanitis. (7056-2 ¶ 29.) When Arvanitis failed to comply with the order to FNA's satisfaction, FNA filed an Emergency Motion for Indirect Civil Contempt. (Complaint ¶ 34; 7056-1 ¶ 33.) In its motion, FNA alleged that Arvanitis was in possession of documents including a value at risk analysis and inventory accounting, an appraisal of FNA's business net worth, process and shipping diagrams and matrixes, customer pricing charts, customer client codes, prospective client lists, lists of supplies, letters, photographs, emails and voice recordings. (Complaint ¶¶ 34-35; 7056-1 ¶¶ 34-35.) Following an evidentiary hearing, that motion was granted. (Complaint ¶ 37; 7056-1 ¶ 37.)

The state court then found that, "Mr. Arvanitis has possession of documents, materials, hardware or software as set forth in the TRO which he has failed to turn over

as ordered. Therefore, Mr. Arvanitis is in indirect civil contempt of court." (Dkt. 25 Exh. F at 7-8.) Accordingly, the court ordered "Arvanitis is adjudicated in indirect civil contempt for not complying with the TRO entered October 2, 2013." and Arvanitis was ordered to pay a fine of $2500 per day to the court until he complied with the TRO. (*Id.* at 8.) Arvanitis moved for reconsideration of the contempt order, and the state court judge entered an order halting the accumulation of fines in excess of $32,500 until a further evidentiary hearing. (Complaint ¶¶ 40-41; 7056-1 ¶¶ 40-41.)

After the second evidentiary hearing on Arvanitis's motion for reconsideration was set, but before the hearing itself, Arvanitis filed for relief under Chapter 7 in the above captioned bankruptcy case. (Complaint ¶ 43; 7056-1 ¶ 43.) FNA sought and was granted relief from the automatic stay in order to pursue its contempt proceeding in state court. (Bankruptcy Dkts. 11, 44.) In state court, the contempt order was reinstated, and Arvanitis did not appeal. (Complaint ¶¶ 45-46; 7056-1 ¶¶ 45-46.) FNA sought in this court further relief from the automatic stay in order to pursue its case in state court to final judgment and to seek incarceration of the debtor for contempt, and that relief was granted, except that FNA was not authorized to attempt collection of any monetary judgment. (Bankruptcy Dks. 26.) In state court, FNA moved to incarcerate Arvanitis for civil contempt. (7056-1 ¶ 49.) Arvanitis was incarcerated for two weeks, then released, although nothing is said about how Arvanitis secured his release. (*Id.*) The state court case has not reached final judgment.

FNA also filed this adversary proceeding to determine the dischargeability of the debt owed by Arvanitis as a result of Arvanitis's acts complained of in the state court case. After an Answer was filed, FNA moved for summary judgment.

In its adversary complaint for nondischargeability, FNA alleges that Arvanitis recorded private conversations between FNA officers and employees with customers, (¶ 17.), and also took copies of customer lists (¶ 19.), and other proprietary information. Further, the complaint seeks relief for threatening to disclose and actually disclosing

4

confidential information to third parties. (¶ 22.) While the conduct FNA complains of

includes taking proprietary information that Arvanitis had no the right to access after

leaving his employment with FNA, the Complaint reaches much farther than what was

covered in the contempt orders. For example the complaint in this proceeding alleges

that "Debtor's breaches of his fiduciary duty caused loss and damages to FNA in excess

of $800,000, in that Debtor caused freight carriers, brokers and forwarders to charge

excessive, above-market fees and costs to FNA." (¶ 26) Further, the complaint alleges

that "Debtor has threatened and continues to threaten to disclose and release such

unauthorized recordings to third parties in violation of the rights of FNA and its

employees." (¶ 30.)

In his response to the motion for summary judgment, Arvanitis attached an

"affidavit" that had a space for a notary's signature, but was never notarized, and was

undated.[1] (Dkt. 31-3.) In the affidavit, Arvanitis declared that he did not sign any Trade

Secret/Non-Disclosure Agreement, an Employee Handbook Acknowledgement, or a

Confidentiality Agreement. (¶¶ 2-4.) He further stated that never installed any

recording devices in FNA offices, but rather that Mr. Alexander (FNA's CEO) directed

them to be installed. (¶ 6.) Arvanitis also stated that he never collected any recording

from the devices. (¶ 7.) He also stated that he did not refuse to return any recordings or

materials, and that he has not threatened to disclose any proprietary and confidential

---

[1] Nor might the "affidavit" be considered a declaration under 28 U.S.C. § 1746, which provides
that an unsworn declaration may be used in place of an affidavit when "in writing of such
person which is subscribed by him, as true under penalty of perjury, and dated, in substantially
the following form … (2) … 'I declare (or certify, verify, or state) under penalty of perjury that
the foregoing is true and correct. Executed on (date). (Signature)'." However, Rule 56(e)(1), F.R.
Civ. P., Rule 7065 F.R. Bankr. P. provides that the court "may give an opportunity to properly
support or address that fact." In any case, FNA has not objected to the affidavit as improper,
and the facts averred to therein are not necessary to deny summary judgment, so no there is no
need to submit a proper affidavit.

information. He also stated that any such material was deleted, and that he has none in his possession.

Upon FNA's motion for summary judgment, a briefing schedule was established. To its reply brief, FNA attached, as Exhibit A, a three or four-inch stack of transcripts from the state court proceeding. Exhibit A was not accompanied by an affidavit regarding its authenticity and completeness, and FNA did not supply an abstract of that long transcript or state in its reply brief what parts of the transcript it wished to rely upon and what pertinence each part might have. Moreover, it was filed with the reply brief and thereby sought to expand the factual basis for relief originally sought. This had the effect of surprising the defendant with new issues after he had responded to the motion. Exhibit A was therefore stricken by motion of court *sua sponte*. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) ("As we have repeated time and again, 'Judges are not like pigs, hunting for truffles buried in [the record].'") Apart from other reasons, the failure to designate portions of the transcript relied on would alone have required the Court's order.

## DISCUSSION

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. Under 28 U.S.C. § 157 and District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois, this proceeding is referred here. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I). It seeks to determine the discharge-ability of a debt, therefore, it "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

6

### SUMMARY JUDGMENT

Summary judgment should only be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a) (made applicable in bankruptcy by Fed. R. Bankr. P. 7056). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 148 (7th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the initial burden is met, the non-moving party that bears the burden of proof on a dispositive issue at trial must affirmatively demonstrate a genuine issue for trial on that issue. *See Id.*

### § 523(a)(4) EMBEZZLEMENT & LARCENY (COUNT 1)

In Count I, FNA Group seeks a declaration that its claim against Arvanitis is not dischargeable on grounds of embezzlement. Section 523(a)(4) provides that certain debts incurred by embezzlement or larceny are not dischargeable. In its complaint, FNA Group only seeks nondischargeability on grounds of embezzlement. In its motion for summary judgment, however, it also argues that larceny may apply.

Embezzlement under § 523(a)(4) has been defined as the "fraudulent appropriation of property by a person to whom such property was entrusted or into whose hands it has lawfully come." *Matter of Weber*, 892 F.2d 534, 538 (7th Cir. 1989). "To prove embezzlement, the creditor must show by clear and convincing evidence that (1) the debtor appropriated funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit." *Id.* For embezzlement, fraudulent intent "is knowledge that the use is devoid of authorization, *scienter* for short." *In re Sherman*, 603 F.3d 11 (1st Cir. 2010) (Souter, J.)

"Larceny is proven for § 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner." *Matter of Rose*, 934 F.2d 901, 903 (7th Cir. 1991).

### § 523(a)(6) WILLFUL & MALICIOUS INJURY (COUNT 2)

In Count II, nondischargeability is sought under § 523(a)(6). A debt is
nondischargeable under § 523(a)(6) for willful and malicious injury when there is "(1)
an injury caused by the debtor (2) willfully and (3) maliciously." *First Weber Group, Inc.
v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013). Injury is a violation of another's legal right,
for which the law provides a remedy. *Id*. Willfulness requires "a deliberate or
intentional *injury*, not merely a deliberate intentional *act* that leads to injury." *Id*.
(quoting *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998)) (emphasis in original).
Maliciousness requires proof of conscious disregard of a duty without just cause or
excuse. *Id*.

### AVAILABILITY OF ISSUE PRECLUSION

A state court judgment is entitled to the same preclusive effect in federal court as
that judgment would have in state court. *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *see* 28
U.S.C. § 1738. This rule applies with equal force in bankruptcy cases. *First Weber Group,
Inc. v. Horsfall*, 738 F.3d 767, 772 (7th Cir. 2013). Even in the dischargeability context,
"[w]here a state court determines factual questions using the same standards as the
bankruptcy court would use, collateral estoppel should be applied..." *Id*.

Under Illinois state law, collateral estoppel, also known as issue preclusion,
applies when:

    (1)   the issue decided in the prior adjudication is identical with the one
           presented in the suit in question,

    (2)   there was a final judgment on the merits in the prior adjudication,
           and

    (3)   the party against whom estoppel is asserted was a party or in
           privity with a party to the prior adjudication.

*In re Owens*, 125 Ill. 2d 390, 399-400 (1988).

Trial courts have broad discretion to make sure that application of offensive collateral estoppel is not fundamentally unfair to the defendant, even though the threshold requirements for collateral estoppel are otherwise satisfied. *Id.* at 399.

In a recent case, another bankruptcy judge in this district granted summary judgment based on collateral estoppel for defalcation by one in a fiduciary capacity under § 523(a)(4), demonstrating that offensive summary judgment based on collateral estoppel may succeed in the nondischargeability context. *Wain v. Wain,* 13-bk-38147, 14-ap-177 (Bankr. N.D. Ill. Dec. 17, 2014). But in *Wain,* the state court case had reached final judgment and the state court judge had made specific factual findings that satisfied the legal requirements for nondischargeability. As will be seen below, however, the factual findings of the state court contempt order applicable here do not satisfy legal requirements for nondischargeability in this proceeding.

### APPLICABILITY OF COLLATERAL ESTOPPEL HERE

FNA Group argues that both the TRO order and the contempt order give rise to collateral estoppel. The TRO order cannot not give rise to collateral estoppel because by its own terms, it only found a likeliness of success on the merits and was thus not a judgment on the merits. *See Wilson v. Hinsdale Elementary School District 181,* 349 Ill. App. 3d 243, 248 (2ᵈ Dist. 2004). However, as discussed below, a contempt order might give rise to collateral estoppel.

Under Illinois state law, a judgment for contempt is a final judgment. "The imposition of a sanction for contempt is final and appealable because, although occurring within the context of another proceeding and thus having the appearance of being interlocutory, it is an original special proceeding, collateral to and independent of, the case in which the contempt arises." *People ex rel. Scott v. Silverstein,* 87 Ill. 2d 167, 172 (1981).

In the state court contempt order, it was found that "Mr. Arvanitis has possession of documents, materials, hardware or software as set forth in the TRO which

9

he has failed to turn over as ordered. Therefore, Mr. Arvanitis is in indirect civil contempt of court." (Dkt. 25 Exh. F at 7-8.) The items "set forth in the TRO" were "any and all documents and materials of any nature pertaining to any work performed for or elated to FNA Group, Inc., …" and "any computer hardware and software containing any of the information contained in Paragraph 1…" (Dkt. 25 Exh. D at 2.) However, the state court contempt order did not have findings relating to how Arvanitis acquired the property (lawfully? fraudulently? by force? some other way?). Nor does it contain any indication of Defendant's state of mind. Therefore, the issue decided by the state court in the contempt order was not identical to either issue of nondischargeability to be decided here.[2] The factual findings in the order – possession and a failure to return the items as ordered – do not by themselves give rise to an inference that the events after Arvanitis left employment with FNA Group occurred in the way described in FNA Group's complaint.

The opinion in *First Weber Group v. Horsfall* is instructive. 738 F.3d 767 (7th Cir. 2013). There, the plaintiff commenced an adversary complaint against the debtor for nondischargeability under § 523(a)(6) for the underlying acts of tortious interference with contract and conversion. The creditor moved for summary judgment, arguing that it was entitled to judgment as a matter of law because of issue preclusion based on the state-court judgment for conversion. The Seventh Circuit panel concluded that although the state court judgment had collateral estoppel effect for two elements necessary for nondischargeability – injury and maliciousness – it did not give rise to collateral estoppel effect for the third required element – willfulness – because willfulness was not

---

[2] Nor did the second contempt order add more. After Arvanitis moved for reconsideration of the contempt order, the state court judge entered an order halting any further accumulation of fines, and set the matter for a hearing. After the hearing, the judge entered a second contempt order. It only stated, "For the reasons set forth in open court, the finding of Indirect Civil Contempt against Demetrios Arvanitis is *re-instated*…" (emphasis in the original.) The motion for summary judgment did not include or quote  the judge's "reasons set forth in open court" referred to in the second contempt order.

necessarily established by the state court judgment for interference with contract and conversion.

Likewise here, willfulness required under § 523(a)(6) to prove a willful and malicious injury has not been established by the state court's contempt order. What has been established is only that at some point, Arvanitis gained possession of some of plaintiff's property, and at some point that possession was determined by court order to have become wrongful. The language in the contempt order did not find that Arvanitis acted with the intent to injure FNA, nor did the contempt order find that Arvanitis took or kept FNA's property knowing that he did not have authorization at any time prior to entry of the TRO. Nor has intent to deceive been established as required under § 523(a)(4) for embezzlement or larceny. Accordingly, there remain genuine issues of material fact, and so summary judgment will be denied.

It may be that all of these questions could have been answered had a transcript of any evidentiary hearing on which the state court judge relied been properly presented here. "While collateral estoppel applies only to issues that have been necessarily and unambiguously decided, express factual findings are not required because an issue may be decided from findings implicit in the judgment." *Leventhal v. Schenberg (In re Leventhal)*, 481 B.R. 409, 420 (N.D. Ill. 2012). "In order to determine whether the elements of collateral estoppel have been satisfied in a dischargeability proceeding, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment." *In re Tapper*, 123 B.R. 594, 600 (Bankr. N.D. Ill. 1991). But the present record is very sparse as to the factual basis for the state court ruling and the nature of that ruling.

11

**CONCLUSION**

For the foregoing reasons, FNA Group's motion for summary judgment will be

denied by separate order.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated January &, 2015